AO (Rev. 5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

UNITED STATES OF AMERICA

vs.

CESAR NAVARRETE
GEOVANNI NAVARRETE
JOSE NAVARRETE
VIRGINIA NAVARRETE

**CRIMINAL COMPLAINT**

CASE NUMBER: 2:07-MJ- 1164-SPC

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about November 20, 2007 to the present, in Collier County, in the Middle District of Florida, defendant(s) did,

harbor and conceal illegal aliens, and conspiracy to commit or aid and abet the commission of the forgoing offense,

in violation of Title 8, United States Code, Section(s) 1324(a)(1)(A)(iii), and 1324(a)(1)(A)(v).

I further state that I am a(n) Special Agent with the United States Immigration and Customs Enforcement, and that this Complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:  ☐ Yes   ☐ No

Signature of Complainant
Anthony B. Mullen

Sworn to before me and subscribed in my presence,

December 3, 2007         at      Fort Myers, Florida

Sheri Polster Chappell
United States Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

## AFFIDAVIT

I, ANTHONY B. MULLEN, being duly sworn, deposes and states the following:

I am employed as a Special Agent for United States Immigration and Customs Enforcement (ICE) and have been so employed since the agency's creation in March 2003. Prior to this, I was employed as a Special Agent for the United States Customs Service since March 1987. As a Special Agent, my duties currently include the apprehension of aliens who are in the United States illegally and the enforcement of the immigration laws including offenses involving the harboring and transportation of illegal aliens and related federal violations.

In support of this affidavit, I am relying on my personal knowledge, training and experience, as well as information obtained from other law enforcement officers involved in this investigation.

This affidavit is in support of an application for a criminal complaint charging Cesar Navarrete, Jose "Pepe" Navarrete, Geovanni Navarrete and Virginia Navarrete with violations of Title 8, United States Code, Section 1324, which criminalizes, among other things, knowing or in reckless disregard of the fact, that an alien has come to, entered, or remains in the United States in violation of law, harbors or shields from detection, or attempts to harbor or conceal from detection, such alien in any place,

1



including any building or any means of transportation; or engages in a conspiracy to commit any of the preceding acts; or aids or abets any of the preceding acts.

On November 20, 2007, at approximately 21:00 hours, deputies of the Collier County, Florida, Sheriff's Office (CCSO) initiated an investigation based on a complaint that three Hispanic males had been held captive by members of the Navarrete family at the Navarrete family residential property located at 209 South 7th Street, Immokalee, Florida 34142. Collier County, Florida, Property Appraiser records indicate that 209 South 7th Street, Immokalee, Florida 34142 is jointly owned by Nelson A. Munoz, Antonia Zuniga, and Virginia Navarrete.

The three Hispanic males making the complaint were identified as Mariano Lucas, Jose Vasquez and Jose Hari. The investigating deputies noted that Vasquez had visible abrasions on his face and ribs and lacerations on his left forearm. Lucas had a visible contusion on the left side of forehead. The three subjects were separated by the investigating deputies and spoken to separately.

Mariano Lucas stated to the investigating deputies that members of the Navarrete family had locked him, Hari, and Vasquez, along with other Hispanic males, inside box trucks and that they were beaten if they attempted to leave the property. Lucas stated that he had escaped from the property on Sunday, (November 18, 2007), through a ventilation hatch

2



on a box truck and that Hari and Vasquez also escaped with him. Lucas advised that Vasquez later attempted to return to the Navarrete's residence but was beaten, kicked and cut. Lucas stated that the Navarrete's had a Hispanic male working for them that was told to listen and monitor the workers to ensure they did not escape the residence.

Jose Vasquez also corroborated Lucas' statement and told the investigating deputies that they, (Vasquez, Lucas, and Hari), had escaped through a hatch on a truck on Sunday, (November 18, 2007). Vasquez stated that he had sustained his injuries from the Navarrete family because he went back to collect his personal belongings.

Hari initially denied that he had escaped from the Navarrete family or that he had been locked in a box truck. Hari told the investigating deputies that the Navarrete's allow him to come and go as he pleases and that he resides in an apartment in Immokalee. However upon further questioning by the investigating deputies, Hari admitted that he had been locked in a truck and that he was fearful of retaliation.

Lucas, Vasquez and Hari all agreed to be interviewed further by Collier County Sheriff's investigators and were transported to the Immokalee, Florida sheriff's substation where they were interviewed by Investigator Charlie Frost and Lt. Rene Gonzalez. As a result of those interviews, Investigator Frost and Lt. Gonzalez determined that there were possibly six or seven other Hispanic subjects being held at the residence

3



against their will and a decision was made to make contact with the residents at 209 South 7th Street, Immokalee, Florida 34142, which is the address for the Navarrete family residential property.

Upon approaching the residence located at 209 South 7th Street, Immokalee, Florida, the investigating deputies noted that there were several box trucks parked in the front of the residence. The investigating deputies made contact with the occupants of the residence and were granted consent to search the residence and exterior area of the property.

While searching the exterior area of the property, the investigating deputies encountered approximately eleven Hispanic males, who were identified by name and date of birth. Deputies observed some of the subjects were sleeping in vans, and three were sleeping in a wooden shack on the property. One subject, identified as Ausencio Rios Escudero, was found by Investigator Frost sleeping in the wooden shack on the property. Escudero admitted to the investigating deputies that he had recently been beaten by members of the Navarette family for attempting to flee the residence. Arios agreed to make a further statement to the investigating deputies and was taken to the Immokalee substation. No further action was taken by the Collier County Sheriff's Office at that time and deputies departed the property.

4

On November 26, 2007, Investigator Frost and Lt. Gonzalez conducted additional interviews of Ausencio Rios Escudero, Mariano Lucas, and Jose Vasquez, at the Collier County Sheriff's Office.

During the interview of Escudero, Escudero stated that he started working for Cesar and Geovanni Navarrete in June of 2007. Escudero said that he worked picking produce in Florida, South Carolina and North Carolina. He stated that during the time he worked for Geovanni Navarrete he was charged $30.00 a week for rent and $50.00 dollars a week for food. Geovanni kept a record of what Escudero owed him in a book. While working for the Navarrete's, Escudero stated he lived where the Navarrete's told him to live, which included the Navarrete property located at 209 South 7th Street, in Immokalee, Florida. Investigator Frost asked Escudero if the Navarrete family knew he was illegally present in the United States. Escudero replied that they were all illegal, including members of the Navarrete family. Escuedero stated he has a debit of $200.00, which he owes the Navarretes. Escudero said he originally went to North Carolina with the Navarretes with $300.00 of his own money, but over the course of working for them he garnered the debit of $200.00. Escudero said if he leaves, the Navarettes would find him and beat him up because he has not paid his debit. Escudero estimated he would have to work four to seven days a week. The workday would start at approximately 6:00 a.m. or 7:00 a.m. to 8:00 p.m. or 9:00 p.m. At the end of the week Esucdero estimated

5

he earned $200.00 to $250.00 but Escudero would be paid approximately $50.00. Escudero said it was because of the money he owed the Navarretes. Escudero said he was not allowed to work for anyone else. Escudero stated if someone did not want to work the Navarrettes would force the workers into the truck.

During the interview of Mariano Lucas, Lucas stated that he started working for Cesar Navarrete in April of 2005 as a field worker picking produce. Lucas stated he paid Cesar $20.00 a week for rent and $50.00 a week for two meals a day. The meals consisted of eggs, rice, beans and tortillas and twice a week they had some sort of meat. Lucas stated that while working in Immokalee, Florida, he lived at the Navarrete property located at 209 South 7th Street. Lucas stated that twice, over the past two years, Cesar and Jose Navarrete had an unknown Hispanic female come to the residence, located at 209 South 7th Street, to make fraudulent U.S. Social Security cards and Resident Alien cards for themselves, (Cesar and Jose), Lucas, and some of the other workers. Lucas provided his fraudulent documents to Investigator Frost, who entered them into evidence. Lucas stated that Cesar had him and the other workers use the fraudulent documents to complete employment applications to obtain work. Once they completed the applications, Cesar took the documents back from the other workers, but Lucas told Cesar that he lost the



documents. Lucas stated Cesar wanted the documents back, so the workers could not go anywhere else to work.

Lucas stated when he first went to work for Cesar he owed him a $300.00 debit. Lucas paid the debit off in one month. After three weeks, Cesar stopped paying Lucas. Lucas said even after his debit was paid off he was not allowed to leave or work for anyone else. The Navarretes told Lucas that if he were caught working for anyone else both he and the other boss would be beat up. Lucas would work up to six days a week from 10:30 a.m. to 9:00 p.m. At the end of the week, Cesar would only pay Lucas $20.00 to $50.00. Lucas also stated that if he questioned the tally of how much he was owed the Navarretes would intimidate him and threaten to beat him up.

Four months ago, in North Carolina, Lucas did not want to go to work. Lucas was pushed by the Navarretes and kicked. They physically loaded him in the van and made him go to work that day. Six months ago, in Arcadia, Florida, he did not want to work that day. He told the Navarretes he did not want to work and if they did anything he would call the police. Lucas stated, Cesar, Geovanni and Martin Navarrete beat him up and as a result he was bleeding in his mouth.

Approximately three weeks ago, in Immokalee, Florida, Lucas did not want to get in the work truck and he was beat and kicked again. Investigator Frost saw Lucas had a lump and bruise on his forehead, and

7

an abrasion on the left side of his head near his eye. He also had bruising on his left shin.

On Sunday night, November 18, 2007, at about 8:00 p.m. the Navarretes forced Lucas and some of the other workers into the back of a U-haul type truck. The truck was locked so they could not get out. Lucas stated he has witnessed the Navarretes lock people in the trucks before. They lock the workers in the trucks so they cannot refuse to go to work in the morning. On Monday morning, November 19, 2007, at about 6:00 a.m. Lucas saw an opening in the top of the truck where light was coming in. He jumped up and down until he was able to get a hold of the top and pull himself out through the hole in the roof. Lucas stated during the night no one was allowed to leave the trailer and the people inside had to urinate and defecate in the corner of the trailer. Lucas left and did not return to the camp. One morning after he left, Jose Navarrete saw him and went after him but stopped because someone else was there. Lucas stated that if anyone left the camp and did not return for work the Navarrete's would look for them, beat them up and make them return to the camp.

During the interview of Jose Vasquez, Vasquez stated that he started working for Cesar Navarrete approximately one and a half years ago as field worker picking produce. . Vasquez stated that he lived on the property located at 209 South 7th Street, Immokalee, Florida. Vasquez stated he did not have to pay rent but he did pay $50.00 a week for food.

8

Vasquez stated the meals consisted of beans, eggs, sausage, and tortillas. Vasquez stated the workers were charged for any beer, soda, or water the Navarretes provided them. He said this was deducted from their pay. Vasquez stated they were charged $5.00 to take a shower in the back yard with a garden hose and a bucket. Vasquez said he would earn $200.00 to $250.00 a week but estimated Cesar Navarrete would only pay him $30.00 at the end of the week. Jose stated once in North Carolina he was sick and did not want to work. He was forced and beat to go to work. He said he was also locked in the back of the U-haul truck on Sunday November 18, 2007 with Mariano. In the morning, he climbed out of the top of the trailer with Mariano. Once outside they got a ladder to help the others out of the trailer, because there was a lock on the rear door. The next day, Vasquez returned to the camp to pick up some items. He was forced into the same truck, and Cesar cut him on the forearm. Vasquez did not know what Cesar used to cut his arm. Vasquez stated Cesar cut him because he did not want to get in the truck. Vasquez was then locked in the truck again. Later, he was let out and he snuck away from the camp. Investigator Frost took photographs of the lacerations on Jose's forearm.

On Tuesday, November 26, 2007, Investigator Frost spoke to Julia Perkins of the Coalition of Immokalee Workers. She stated a Ramiro Roblero Si Fuentes and Geronimo Roblero Si Fuentes came to the Coalition office at about 9:00 p.m. They stated they were from the Navarretes camp

9

on South 7th Street near Colorado Ave. They wanted to sign up for the protest march in Miami Florida, so they could ride the bus over there. They stated the conditions were bad in the camp and they were only being paid $5.00 to $10.00. Julia was unsure if it was for the day or the week. They stated they were sleeping in vans on the property and they are sometimes shut in. The two of them had been at a meeting at the Coalition on Wednesday and then returned to the camp. Ramiro said that if you went somewhere the boss didn't like you would be beaten when they found you or when you returned. They said they Navarretes would search for workers if they didn't return. Ramiro said when they went back to the camp his hands were chained behind his back and he was kicked and beaten. Julia said she saw Ramiro's hand and wrist were swollen, red and bruised. Ramiro was having difficulty moving the hand and said those injuries were from the chain. Julia also saw Ramiro had a cut and bruising on his shin. Members of the Coalition of Immokalee Workers took photographs of Ramiro's injuries.

    On November 28, 2007, based on the information contained herein above, your affiant applied for and was granted a federal search warrant to search the premises and property located at 209 South 7th Street, Immokalee, Florida, for evidence of violations of Title 8, United States Code, Section 1324, the harboring and concealing of illegal aliens and Title

18 United States Code, Sections 1581, 1584, 1589, and 1590, related to the holding of a person or persons in a condition of involuntary servitude.

On November 29, 2007, at approximately 5:05 a.m., the search warrant was served on the residential property located at 209 South 7th Street, Immokalee, Florida. During an initial sweep of the exterior area of the property, twelve Hispanic males were encountered. The twelve individuals appeared to be residing on the property and living inside of vehicles, (vans or box trucks), and a wooden shack like structure. Inside the residence, several members of the Navarrete family were encountered, to include Cesar, Jose "Pepe", Geovanni, and Virginia Navarrete. Brief interviews of all the encountered subjects were conducted to determine their immigration status. All twelve Hispanic males encountered on the outside area of the property were determined to be illegal aliens. Geovanni Navarrete and Virginia Navarrete were also determined to be illegal aliens and in addition, Cesar Navarrete and Jose "Pepe" Navarrete were determined to be illegal aliens who had been previously removed/deported from the United States. The twelve illegal aliens encountered on the outside area of the property, along with Cesar, Jose "Pepe", Geovanni, and Virginia Navarrete were taken into U.S. Immigration and Customs Enforcement custody for being in the United States in violation of law. All of the above were subsequently transported to the Collier County Sheriff's

11



Office jail for immigration processing and detention pending resolution of their immigration violations.

Further interviews of the twelve illegal aliens encountered on the property located 209 South 7th Street, Immokalee, Florida, were conducted separately at the Collier County jail located in Naples, Florida, the following statements were made by some of the interviewed illegal aliens.

Geronimo Rafael-Salas stated, among other things, that he is a Mexican citizen from Chiapas, Mexico, who entered the United States illegally in approximately 2005. Rafael-Salas stated he has worked for Geovanni Navarrete for approximately the last five months as a field worker. Geovanni told Rafael-Salas he could live on the property located at 209 South 7th Street, Immokalee, Florida, which he did. Rafael-Salas stated that he paid $10.00 a day for food, which was paid to Virginia Navarrete. Rafael-Salas said that Geovanni drove him to and from work in the fields. Rafael-Salas stated that Geovanni wanted him (Rafael-Salas) to obtain fraudulent identification documents but that he (Rafael-Salas) did not want fraudulent documents.

Ramiro Roblero Si Fuentes stated, among other things, that he is a Mexican citizen from Chiapas, Mexico, who entered the United States illegally in August of 2006. Roblero initially stated he has been working for the Navarretes for the last twenty days, he later stated he started working for Geovanni Navarrete approximately six to eight months ago. Roblero

12

said that he met Geovanni and Cesar Navarrete at a local store in Immokalee and asked if he could go to work for them since he needed employment. Roblero stated he was paid $1.00 a bucket for picking tomatoes in the fields. Roblero said that Cesar and '"Pepe" (Jose Navarrete) each have their on work crews. Roblero lived on the Navarrete's property and paid $50.00 a week for food, which was provided by Virginia Navarrete, who is Geovanni's mother. Roblero said Geovanni drove him to and from work in the fields. Roblero stated that he told Geovanni that he was in the United States illegally and that Geovanni took information contained on his official Mexican documents, which was to be used to obtain worker identification documents. You affiant is aware that a Mexican National Registration card in the name of "Ramiro Roblero Cifuentes" was found in a bedroom during the search of the residence located at 209 South 7th Street, Immokalee, Florida.

Lorenzo Salinas stated, among other things, that he is a Mexican citizen from Oaxaca, Mexico, who entered the United States illegally in approximately 1997. Salinas stated that he has worked for the Navarrete family for approximately nine years, first for Cesar Navarrete's father, who is deceased, and now for Cesar. Salinas said he is paid $1.00 a bucket for picking tomatoes in the fields. Salinas stated that he lives in a red van, with two others, and that two people live in the white van, and five people live in the big yellow truck on the Navarrete's property located at 209 South

13



7th Street, Immokalee, Florida. Salinas said he paid Virginia Navarrete $50.00 a week for food.

Sworn statements were also taken from Cesar Navarrete, Jose "Pepe" Navarrete, Geovanni Navarrete, and Virginia Navarrete. Each subject was given a Miranda warning in either English or Spanish, and each waived their rights verbally and signed a waiver of rights statement. Collier County Sheriff's investigator Charlie Frost recorded these interviews.

During the interview of Cesar Navarrete, Cesar stated, among other things, that he resides at the residence located 209 South 7th Street, Immokalee, Florida, with members of his family. Cesar stated he is a packer/grader who works in the produce fields. Cesar said that the people living on the property were people who came to the house looking for work. Cesar stated that they couldn't afford to pay rent anywhere so he and his family allow the workers to live in the vehicles on their property. Cesar said that the workers go to work in the fields with them when there is work to do. Cesar said they pay the workers $1.00 a bucket for picking produce. Cesar stated that his family does not charge the workers rent but that his mom, Virginia Navarrete, charges them $50.00 a week for food. Cesar stated that he keeps track of how much money the workers owe his mother. Cesar stated that believes all of the workers are illegal aliens.

14

During the interview of Geovanni Navarrete, Geovanni stated, among other things, that he resides at 209 South 7th Street, Immokalee, Florida, with members of his family. Geovanni said that the people living on the property were workers who could not afford to pay rent anywhere so they, the Navarrete family, let them stay on their property. Geovanni said that his mom, Virginia, charges them $50.00 a week for food. Geovanni stated that he keeps a running tab of how much the workers owe him from borrowing money for beer and other things and he deducts the money owed from the money they earn working in the fields.

During the interview of Jose "Pepe" Navarrete, Jose stated, among other things, that he resides at 209 South 7th Street, Immokalee, Florida, with members of his family. Jose stated that the people who were found on the property were people who would normally be living in the woods. Jose said that they come to the house looking for work and that he and other members of the family give them permission to live on the property. Jose stated that not all of the people have permission to stay, but that the other workers let people stay with them. Jose said that they take some of the people living on the property to work with them in the fields and that the workers get paid by how many buckets of produce they pick. Jose stated that they do not charge the workers rent but that some of the workers pay his mother, Virginia, $30.00 - $40.00 a week for food. Jose stated that most of the workers were illegal.

15



During the interview of Virginia Navarrete, Virginia stated, among other things, that she resides at 209 South 7th Street, Immokalee, Florida with members of her family. Virginia stated that she co-owns the residence with Antonia Zuniga, who is a long time friend of her family, and Nelson Munoz, who holds the mortgage on the residence. Virginia stated that the people who were living outside her residence are people who have no other place to live and they let them stay on the property. Virginia stated that sometimes her sons take them to work in the fields. Virginia said that she provides meals to some of the workers and that she charges them $40.00 a week. Virginia stated that even if the workers couldn't pay she would still feed them. Virginia said that she knows some of the people who sleep on her property maybe illegal, but she didn't ask them.

Therefore, based on the information contained in this affidavit, your affiant believes that Cesar Navarrete, Jose "Pepe" Navarrete, Geovanni Navarrete, and Virginia Navarrete have committed violations of

16



Title 8, United States Code, Subsection 1324(a)(1)(A)(iii), harboring and concealing of aliens; and Subsection 1324(a)(1)(A)(v), conspiracy to commit or aid and abet the commission of the forgoing offense.

FURTHER AFFIANT SAYETH NAUGHT

Anthony B. Mullen, Special Agent
U.S. Immigration and Customs Enforcement

Sworn and subscribed to me this 3rd day of December, 2007 in Fort Myers, Florida

SHERI POLSTER CHAPPELL
United States Magistrate Judge

17